UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LISA McHANEY,

        Plaintiff,

v.                              Case No. 1:11-CV-51
                                 Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

        Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on July 15, 1971 (AR 171).[2] Plaintiff alleged a disability onset date of December 1, 2003 (AR 171). Plaintiff completed the ninth grade (AR 180), and plaintiff had previous employment as: an advertising sales clerk for a newspaper; assembler at various factories; cashier at a restaurant; cashier at a root beer stand; laborer for a temporary service; nursing assistant; sorter at a thrift store; and waitress (AR 177). Plaintiff identified her disabling conditions as: diabetic; anxiety; depression; memory loss; high blood pressure; retaining water; and irregular heartbeat (AR 175). Plaintiff stated that due to these conditions, she is "not able to sit or stand for long periods of time," and that the conditions cause "swelling in legs and numbness in feet" (AR

---

[1] During the administrative proceedings, plaintiff was known as Lisa Alonzo.

[2] Citations to the administrative record will be referenced as (AR "page #").

175-76). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 15, 2010 (AR 15-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

3

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 1, 2003 and that she met the insured status requirements under the Act through December 31, 2007 (AR 15).[3] Second, the ALJ found that plaintiff had a severe impairment of insulin-dependent diabetes mellitus (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). In this regard, the ALJ reviewed Listings 9.08 (diabetes mellitus), 12.04 (affective disorders) and 12.06 (anxiety related disorder) (AR 19). The ALJ decided at the fourth step that plaintiff had:

> the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b): she cannot lift and/or carry more than 20 pounds occasionally and 10 pounds frequently; sit for more than a total of six hours in an eight-hour period; stand and/or walk for more than a total of six hours in an eight-hour period; climb ladders, ropes, or scaffolds; or balance, stoop, kneel, crouch, crawl, or climb stairs/ramps more than occasionally.

(AR 19).

---

[3] Plaintiff filed her present application for DIB and SSI on March 23, 2007 (AR 15). The ALJ provided a partial explanation for this delay, noting that plaintiff had previously filed applications for DIB and SSI in May 2004 February 2005 and February 2006 (AR 15).

4

The ALJ found that plaintiff's past relevant work as a waitress/cashier and retail sales clerk for a newspaper did not require the performance of work-related activities precluded by her residual functional capacity (RFC) (AR 23). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, " at any time through the date of this decision" (January 15, 2010) (AR 24).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.[4]

**A.      Whether the Commissioner erred in failing to consider all impairments in determining whether the impairments, severe or non-severe, equaled in severity, whether it erred in postulating an RFC that was based on a selective reading of the facts that did not consider all impairments, and whether it erred in the questions posed to the VE in making the RFC determination.**

Plaintiff contends that the ALJ failed to recognize certain three mental conditions as severe impairments: Mood Disorder, NOS; Depression; and, Anxiety. Plaintiff's Brief at pp. 18-19.[5] A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The severity standard is used an "administrative convenience to screen out claims that

---

[4] The court will  begin its review with plaintiff's third claim, which contests the ALJ's finding that plaintiff's mental impairments were not severe.

[5] Plaintiff's brief does not address an alleged error with the hypothetical questions posed to the vocational expert (VE). Plaintiff's Brief at pp. 18-20.  Accordingly, the court will not review this issue.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."); *Little v. Cox's Supermarkets*,  71 F.3d 637, 641 (7th Cir. 1995) (a court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments).

are totally groundless solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error, because the ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Here, the ALJ found that plaintiff suffered from a severe impairment of insulin dependent diabetes mellitus and that her mental impairments "do not cause more than a minimal limitation of her ability to perform the mental demands of work activity and, therefore, these impairments are not "severe," as defined by the Social Security Regulations (AR 17-18). Even if the ALJ had improperly classified plaintiff's mental impairments as "not severe," this classification is not an error requiring reversal. *See Maziarz*, 837 F.2d at 244.

The more complex issue for the court is whether the ALJ properly considered plaintiff's non-severe mental impairments in evaluating her RFC. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. §§ 404.1545; 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). "Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be

6

severe.  *See* 20 C.F.R. §§ 404.1523, 404.1545(a)(2)."  *White v. Commissioner of Social Security*, 312 Fed. Appx. 779, 787, (6th Cir. 2009) (while the ALJ did not err in determining that the alleged mental impairment was not severe, the ALJ did err when he gave no explanation for totally discounting the objective evidence of the claimant's mental impairment in determining the RFC).

> In determining whether plaintiff's mental condition constituted a severe impairment under the regulations, the ALJ noted that plaintiff was diagnosed with a panic disorder in July 2003 and diagnosed with a mood disorder in both May 2004 and October 2007 (AR 18).  The record reflects these diagnoses.  In July 2003, plaintiff met with a social worker at Cornerstone Mental Health and Substance Abuse Services (AR 522).  At that time, Caroline Clark, M.S.W., C.S.W., diagnosed plaintiff with a panic disorder, without agoraphobia, and a generalized anxiety disorder (AR 524).  Plaintiff had a good prognosis and appeared able to care for herself and her children (AR 524).  Plaintiff was seen by a psychiatrist, Mazhar Munir, M.D., on July 31, 2003, who diagnosed plaintiff with a panic disorder with agoraphobia and major depression (AR 526).  Dr. Munir prescribed Zoloft and Risperdal (to help with sleep and anxiety) and authorized two weeks of medical leave (AR 527).  In April 2004, plaintiff was diagnosed with "anxiety/depression" at Michigan Medical, P.C., and prescribed Paxil (AR 396-97, 437, 441).  The ALJ considered plaintiff's examination by a psychiatrist, R. Combalecer, M.D., at Arbor Circle Counseling Services in May 2004 (AR 18, 472).  At that time, Dr. Combalecer assigned plaintiff a Global Assessment of Functioning (GAF) score of 76.[6]

---

[6] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness.  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id*. at 34.  At the high end of

The ALJ also considered an examination by an agency psychologist, James Lozer, Ed.D., who examined plaintiff on October 9, 2007 and found that she had a "Mood Disorder NOS with mixed anxiety and depression" and GAF score of 52 (AR 18, 360-64).  Based on Dr. Lozer's consultative examination and function reports prepared by plaintiff and her daughter, Eva Alonzo, the DDS psychologist, John Gallagher, Ed.D., found that plaintiff had memory complaints which did not reach the point of requiring a diagnosis, that she had only mild limitations to her functioning, that she did not meet any listed impairment, and that her mental impairments were "not severe" (AR 347, 356, 358).

The ALJ noted plaintiff's that GAF scores reflected in the reports (i.e., 52 to 76) indicated only a slight to moderate impairment of functioning.  In this regard, a GAF score of 52 falls within the range of 51 to 60 and reflects moderate symptoms or any moderate difficulty in social, occupational, or school functioning, while  GAF score of 76 falls within the range of 71 to 80 and reflects transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning.  *See DSM-IV-TR* at p. 34.

The ALJ also observed that the management of plaintiff's emotional symptoms has been maintained by medication therapy alone and has not required extensive revision (AR 18).  In addition, plaintiff's mental impairments have never required inpatient mental health treatment, that plaintiff has not attended counseling since her last visit to Arbor Circle in July 2007, and that no treating physician has determined that plaintiff's emotional symptoms were so severe as to warrant

---

the scale, a  person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

a referral for counseling or other mental health treatment subsequent to July 2007 (AR 18). Finally, the ALJ considered plaintiff's daily activities, which are performed without direction or supervision (AR 18). The ALJ noted that plaintiff maintained an independent residence with her son in a duplex, engaged in a number of activities (preparing simple meals, performing household chores, attending most family gatherings), drove as needed (about three times per week), shopped for groceries, and attended to her personal needs (AR 21). Based on this evidence, which reflected only minimal limitations caused by plaintiff's mental impairments, the ALJ concluded that her mental impairments had no impact on plaintiff's RFC (AR 18, 22).

Plaintiff contends that her mental condition limited her ability to perform work related activities, pointing out her diagnoses and GAF scores. However, neither the diagnoses nor the GAF scores are dispositive on the issue of disability. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988). Similarly, plaintiff's GAF scores are not dispositive on the issue of disability. "[A]ccording to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006). "[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.*

The ALJ's decision to exclude plaintiff's mental limitations from the RFC is supported by substantial evidence. Accordingly, plaintiff's claim of error shall be denied.

**B.**  **Whether the Commissioner erred as a matter of law in failing to properly apply the "attending physician rule" and whether the Commissioner erred in failing to properly consider and weigh other medical opinions of record.**

**1.**  **Dr. Steen**

Plaintiff contends that the ALJ improperly weighed the opinions of her primary care physician, Stacy Steen, M.D.  Dr. Steen treated plaintiff from 2008 through October 2009 (AR 560-81).  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight."  *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).  An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."  *Cutlip*, 25 F.3d 284 at 287; 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)

10

("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

On September 15, 2009, Dr. Steen completed a medical examination report for the Michigan Department of Human Services (AR 560). Dr. Steen stated that she had first seen the patient on December 31, 2008 (AR 560). The doctor diagnosed plaintiff as suffering from type 2 diabetes, memory loss and sleep apnea (AR 560). Dr. Steen stated that plaintiff had the following limitations: she could occasionally lift 20 pounds and frequently lift 10 pounds; stand and walk at least 2 hours in an 8-hour workday; sit less than 6 hours in an 8-hour workday; could not use her hands for repetitive simple grasping or fine manipulating; could use both hands for reaching, pushing and pulling; and could use both feet to operate foot or leg controls (AR 561). These limitations were caused by "diabetes neuropathy & memory loss" (AR 561). Plaintiff had mental limitations in comprehension, memory and sustained concentration (AR 562).

Approximately one month later, on October 21, 2009, Dr. Steen completed a form entitled "physical capacities assessment," which identified somewhat different limitations. The doctor diagnosed plaintiff with "diabetes 2," neuropathy, memory loss and edema (AR 579). Plaintiff had no problems sitting (i.e., could sit continuously for up to 8 hours with breaks), but could only stand 2-3 hours and walk up to 45 minutes (AR 579). Plaintiff could never squat, crawl, kneel or climb (AR 579). She could sometimes (continuously up to 2 hours or occasionally up to 6 hours) bend, push, pull, climb stairs and reach over her shoulders (AR 579). She had some limitations in grasping due to the neuropathy, but the doctor's notes are unintelligible as to how often she could perform that action (AR 579). Dr. Steen felt that plaintiff would need a sit-stand option and need breaks "as symptoms dictate" (AR 579-80). Plaintiff would have "serious limitations as to pace and

concentration" (AR 579).  The doctor, without explanation, indicated on the form that plaintiff

"would likely miss 3 days or more of work and be tardy 3 or more days per month," and that

plaintiff was "best suited for part-time work, as opposed to full-time work, which would not

accommodate her limitations" (AR 579).

The ALJ gave little weight Dr. Steen's opinion because it was not supported by her

own treatment records (AR 23).  The ALJ explained:

> The undersigned notes that in assessing the claimant's capacity for lifting, Dr. Steen
> indicated in September 2009 that she could lift 20 pounds occasionally and 10
> pounds frequently (Exhibit 17f) but indicated the following month that she
> considered the claimant unable to lift 10 pounds (Exhibit 19f).  The undersigned
> further notes that Dr. Steen's October 2009 opinion appears to rely upon limitations
> assessed due to neuropathy and "memory loss" yet the record contains no objective
> evidence to establish either of these.  Dr. Steen also fails to provide an explanation
> for her assessments with regard to the claimant's ability to maintain adequate
> attendance at a job or why she indicated that the claimant would be limited to only
> part-time work activity (Exhibit 19f).  While Dr. Steen's opinions have been
> considered by the undersigned, such appear to be based upon the claimant's
> subjective complaints and, with no supportive evidence, little weight has been
> accorded.

(AR 23).

The ALJ provided good reasons for the weight assigned to Dr. Steen.  Although Dr.

Steen reported that she had seen plaintiff since December 31, 2008, there are no records for

treatment with Dr. Steen prior to March 2009.  On March 24, 2009, plaintiff complained that she had

been forgetful for the least two months; that she become frustrated and had screamed at her family;

and that on some days she was "OK" and her memory was "good" (AR 570).  In June 2009 plaintiff

complained of an infected hangnail on her right great toe (AR 568).  On September 15, 2009, Dr.

Steen noted that plaintiff's diabetes was "out-of-control," apparently because plaintiff forgot to take

her medicine (AR 565).  At that time, plaintiff complained of arm numbness, but she had no edema

in her extremities, full range of motion in her joints, normal gait, normal neurological findings and appropriate mood and affect (AR 565). Plaintiff reported (incorrectly) that she had not seen a neurologist in the past, which led Dr. Steen to recommend a neurological referral for the neuropathy (AR 565). In this regard, the record reflects that a neurologist, Tim Wei, M.D., Ph. D., had examined plaintiff in December 2004, conducted an EMG, and found no evidence of a neurological disorder (AR 424-25). The ALJ articulated good reasons for discounting Dr. Steen's opinions of September and October 2009. The ALJ's determination is supported by substantial evidence and, accordingly, plaintiff's claim of error with respect to this determination will be denied.

### 2.        Dr. Harris

Plaintiff contends that the ALJ failed to consider the opinions of Steven Harris, Ed.D., who performed a consultative examination of plaintiff in October 2009 and prepared a mental RFC assessment on December 20, 2009 (AR 583-90). Dr. Harris diagnosed plaintiff with major depressive disorder, recurrent, and a generalized anxiety disorder (AR 587). In the mental RFC assessment, Dr. Harris felt that plaintiff had either marked or extreme limitations in all areas associated with "making occupational adjustments" (e.g., the ability to follow work rules, relate to co-workers, deal with the public) (AR 588). Plaintiff had extreme limitations in the ability to carry out detailed or complex job instructions, and either marked or extreme limitations in all areas of "making personal/social adjustments" (e.g., the ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability) (AR 589). Although Dr. Harris was not a treating psychologist, having examined plaintiff on only one occasion in 2009, he stated that plaintiff's activities had been limited since December 1, 2003 (some six years before his examination) (AR 589).

13

The ALJ's failure to discuss Dr. Harris' opinion does not constitute error. There is no requirement that the ALJ's decision address every piece of evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). As previously discussed, the ALJ found no evidence that plaintiff's mental condition posed a limitation on her ability to work. Accordingly, the ALJ did not commit error in failing to discuss the opinions of Dr. Harris.

      C.     **Whether the Commissioner erred as a matter of law in failing to properly analyze the lay opinion evidence of record and erred in properly assessing Ms. McHaney's credibility.**

Plaintiff contends that the ALJ failed to weigh the testimony of her daughter, Eva Alonzo, or to determine the credibility of that testimony. The ALJ may use evidence of "other" sources to show the severity of a claimant's impairments and how those impairments affect the claimant's ability to work. 20 C.F.R. § 404.1513(d). These "other" sources include non-medical sources such as spouses, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy. 20 C.F.R. § 404.1513(d)(4). Perceptible weight must be given to lay testimony when "it is fully supported by the reports of the treating physicians." *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). *See also, Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004) ("[t]he testimony of lay witnesses, however, is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians") (citing *Lashley*).

Eva Alonzo did not testify at the administrative hearing. Rather, her testimony appears in the forms of a third party adult function report dated September 17, 2007 (AR 195-202) and a sworn statement given on October 28, 2009 (AR 267-92). In the function report from 2007, Eva sometimes bathes plaintiff when she is "real sick", and assists plaintiff in dressing and shopping

14

(AR 196, 198).   While plaintiff cannot walk by herself or perform yard work, she can fix some of

her own meals, go to church twice a week, shop with Eva's assistance, iron and clean clothes, and

perform yard work (AR 197-98).  Plaintiff can also pay bills, count change, handle a savings account

and handle a checkbook (AR 198).

In her sworn statement  from 2009, Eva reported that plaintiff was in worse condition.

For example, plaintiff could not walk further than the street corner and back to her house without

inflammation of her legs (AR 270).  Plaintiff could walk about a block and would then have to sit

down and rest for about 30 minutes (AR 282).  Plaintiff could not wash dishes because if anything

got in her fingers, they become infected (AR 270).  Plaintiff also had a bad memory and starts

arguing with everyone, "going crazy," if she cannot remember where she placed her keys (AR 270).

Plaintiff forgets to take her medication (insulin), forgets doctor's appointments, and sometimes

forgets to bathe, comb her hair or put on deodorant (AR 271-72, 280).  Plaintiff has "panic attacks"

(gets angry and loses control) three or four times a week, is always nervous and anxious, and gets

depressed about once a week (AR 271-76).

The ALJ summarized Eva's testimony as follows:

> The claimant's daughter, Eva Alonzo, essentially corroborated the claimant's
> testimony in a Function Report completed in September 2007 and in a sworn
> statement conducted in late October 2009, indicating in each that she assists her
> mother with housework, shopping, etc. due to the symptoms the claimant
> experiences with her feet and fingers and that she has also observed her mother's
> anger outbursts when she has difficulty remembering, noting that she often forgets
> where she puts her car-keys, forgets medical appointments, and forgets to take her
> medications.

(AR 21).  The court agrees with plaintiff that the ALJ did not address the credibility or weight of

Eva's testimony.  However, under the circumstances of this case, the ALJ was not required to give

Eva's lay testimony any weight because the testimony was not "fully supported by the reports of the

15

treating physicians." *Simons*, 114 Fed. Appx. at 733; *Lashley*, 708 F.2d at 1054.  Accordingly, plaintiff's claim of error with respect to the lay testimony should be denied.

## IV.  CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion shall be issued forthwith.


Dated:  March 30, 2012                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

16